# IN THE COURT OF APPEALS OF IOWA

No. 19-0982
Filed April 29, 2020

**IN RE THE MARRIAGE OF ROBERT D. HENSLEY
AND ALYSIA L. ROE**

**Upon the Petition of
ROBERT D. HENSLEY,**
     Petitioner-Appellee,

**And Concerning
ALYSIA L. ROE,**
     Respondent-Appellant.

_____

Appeal from the Iowa District Court for Wapello County, Joel D. Yates, Judge.


In a common-law marriage dissolution action, the wife challenges the property division, specifically the amount of an equalization payment, ordered by the district court and requests appellate attorney fees. **AFFIRMED AS MODIFIED**.


Heather M. Simplot of Harrison, Moreland, Webber, Simplot & Maxwell, P.C., Ottumwa, for appellant.

Bryan J. Goldsmith of Gaumer, Emanuel, Carpenter & Goldsmith, P.C., Ottumwa, for appellee.


Considered by Bower, C.J., and Greer and Ahlers, JJ.

**AHLERS, Judge.**

In this appeal from the dissolution of a common-law marriage of approximately ten years in length, the wife challenges the division of property ordered by the district court. In the dissolution decree, the district court followed a property division model that valued the assets and liabilities of the parties, awarded each asset and liability to one of the parties, determined the resulting net worth of each party based on the total net value of all assets and liabilities awarded to the party, and ordered the party with the higher resulting net worth to pay an equalization payment to the other party in an amount that would roughly equalize the final net worth amount for each party. The wife does not challenge the model followed by the district court or the division of the assets and liabilities in terms of who got what. She does challenge various rulings inherent in the district court's order in terms of value of certain assets, whether certain assets or liabilities were improperly not included in the calculation of the parties' respective net worths, whether certain assets and liabilities should be treated as marital property so as to be included in the equalization calculation, and the ultimate amount of the equalization payment ordered by the district court.

## I.     Background Facts and Procedural History.

The couple met in 2007, began dating, and had a child together in 2008.[1] The parties agreed they entered into a common-law marriage in February 2009. Since both parties were in their thirties when they married, they naturally brought various assets and liabilities into the marriage. The husband filed for dissolution

---

[1] The parties reached agreement on child custody and support issues with respect to the child, so those are not issues on appeal.

of the common-law marriage in April 2018. By the time of the dissolution trial in March 2019, some of the premarital assets and liabilities remained while others did not. Following trial, the district court issued a decree dissolving the marriage. In the property division portion of the decree, the district court valued and distributed the assets and liabilities as previously described. The resulting net worth to the husband was $95,921.12, and the resulting net worth to the wife was $53,233.75. A payment of $21,343.69 (one-half of the difference between the parties' respective net worths) would have been necessary to precisely equalize the net worths of the parties; however, the district court ordered the husband to pay the wife an equalization payment of $23,100.00, which it increased to $23,400.00 after the wife filed a motion to reconsider, amend, or enlarge. The husband was also ordered to pay spousal support to the wife in the amount of $400.00 per month for fifteen months as well as $1400.00 of the wife's attorney fees. The wife appeals the property division aspects of the decree, challenging the amount of the equalization payment as being inequitable. The wife also seeks appellate attorney fees.

## II. Standard of Review.

"Our review in dissolution cases is de novo." *In re Marriage of Schriner*, 695 N.W.2d 493, 495-96 (Iowa 2005). Although our review of the district court's ruling is de novo, we accord the district court considerable latitude in making its determination and will disturb the ruling only when there has been a failure to do equity. *Id.* at 496.

**III. Property Division Issues.**

**A. Issues Presented.**

The wife raises the following claimed errors by the district court:

(1)  improperly overvaluing the real estate awarded to the wife (the Castle Property);

(2)  failing to treat the equity in the Castle Property as premarital property not subject to division;

(3)  treating the husband's student loan debt as marital property in calculating his net worth;

(4)  treating the husband's credit card debt as marital property in calculating his net worth;

(5)  failing to treat the wife's Roth IRA as premarital property not subject to division;

(6)  failing to treat the wife's credit union account as premarital property not subject to division;

(7)  failing to give the wife proper credit for money in the wife's premarital bank account that was used to pay the husband's premarital debt;

(8)  failing to include the value of the husband's bank account when calculating the husband's net worth; and

(9)  improperly including an outstanding loan from the value of the husband's 401(k) account.

**B. Discussion.**

We address each of the wife's contentions in turn, noting the district court did not address all of these issues in its rulings.

**(1) Value of the Castle Property.**

The district court valued the Castle Property at $75,200.00. Based on evidence presented at trial, including the evidence of assessed value of the property being $75,200.00, we find no error in the district court's valuation.

**(2) Premarital Equity of the Castle Property.**

The evidence established the wife purchased the Castle Property in 2007, shortly before the couple began dating. She paid $55,000.00 for the property. As of 2009, when the couple married, the mortgage loan balance on the property was

a little over $50,000.00. Some improvements were made to the property during the marriage, and the property was used as rental property, generating income for the couple. Given the relatively small amount of equity in the property at the time of the marriage, the improvements made during the marriage, and the use of the property to generate income during the marriage, we find no error in the district court's failure to include any premarital equity as non-marital property.

### (3) Husband's Student Loan Debt.

There is no dispute the husband's student loan debt was incurred during the marriage. Nevertheless, the wife argues that since the loan proceeds were used to pay tuition rather than for "household expenses or debts" and the husband did not get a degree, the student loan debt should not be included as marital property to reduce the husband's net worth for purposes of calculating an equalization payment. She argues the student loan debt provided no benefit to the husband, the wife, the household, or the marriage, so it should be excluded in making the calculations. We disagree. The fact the husband did not complete a degree does not necessarily mean his efforts were wasted or he alone should bear the brunt of uncompleted plans. *See In re Marriage of Burgess*, 568 N.W.2d 827, 829 (Iowa Ct. App. 1997) ("We do not believe the focus should be whether or not a spouse is personally responsible for a debt incurred by the other spouse, but whether the payment of the obligation was a reasonable and expected aspect of the particular marriage."). In assessing this argument, it should be kept in mind that every expenditure made during a marriage that is not an investment or payment of a debt negatively affects the marital net worth by depleting an asset (e.g., cash or a bank account) or increasing a liability (e.g., credit card debt). To

take the wife's argument to its logical, albeit absurd, conclusion, every dissolution case and trial could be an endless battle over every purchase made during the marriage to determine whether it was for the good of the marriage—an alarming thought to most parties, lawyers, and judges. While we realize the wife is not taking the argument to this extreme, the underlying premise of her argument has the same weakness. In this case, there is nothing about the husband incurring student loan debt early in the marriage suggesting it was done irresponsibly or for an improper purpose. Under these circumstances, we find no error in including the husband's student loan debt as a marital liability to be accounted for in the property division.

### (4) Husband's Credit Card Debt.

For the same reason as explained in section (3) addressing the husband's student loan debt, the inclusion of most of the husband's credit card debt for purposes of calculating his net worth was not error. The wife points out that the husband's credit card debt was zero when the dissolution proceeding was filed, so she claims any credit card debt at the time of trial should not be considered in the calculation. The wife does not point to any frivolous, irresponsible, or excessive spending by the husband that generated the credit card debt. Additionally, the parties continued to live in the same residence through the time of trial, with the parties continuing to pay the household bills. Therefore, with one exception, we conclude the husband's credit card debt was incurred for acceptable living expenses and should be included as marital debt. The one exception is $2000.00 of the husband's credit card debt that was incurred to pay the child and family reporter. Prior to trial, a child and family reporter was appointed pursuant to Iowa

Code section 598.12B (2018). The husband was ordered to pay the costs of that reporter, which he did by using his credit card. If the husband were allowed to treat the credit card charge as marital debt, it would defeat the purpose of the court's order that the husband bear that cost. Therefore, $2000.00 of the husband's credit card debt shall be excluded from the calculation of the husband's net worth and the corresponding equalization payment. The remaining $2912.22 of the husband's credit card debt shall be considered marital property for inclusion in the calculations.

### (5) Wife's Roth IRA.

The wife asserts it was inappropriate to consider the $6000.00 value of her Roth IRA in the property division calculation because the funds used to open the account were premarital funds and she intends to set the money aside for the parties' child's college education. While the proof of the use of premarital funds is thin and there is nothing obligating the wife to use this asset that is in her name for the child's benefit, we note the parties stipulated during the course of trial that the account should be considered the child's account. Based on that stipulation coupled with there being some evidence the funds used to create the account were premarital, we find the value of the Roth IRA should have been excluded from the property equalization calculation.

### (6) Wife's Credit Union Account.

The evidence established the wife's credit union account with a balance of $5000.00 was established before the marriage. The account funds were not used as marital property or commingled in any fashion, and the husband did not

contribute in any way to the account. Under these circumstances, this premarital property should not have been considered in the property equalization calculation.

### (7)     Wife's Bank Account.

The wife seeks to be given credit for the value of funds in a premarital bank account[2] she asserts were used to pay the husband's premarital debt. We note the district court placed no value on any bank account on the wife's side of the ledger in calculating the property equalization payment, which is consistent with the proposed distribution list submitted by the wife. Presumably this is because these funds no longer exist. Due to the length of time that has passed and the lack of convincing evidence establishing how the funds were dissipated, we are not inclined to resurrect a now nonexistent asset and nonexistent debt for the purpose of influencing the division of assets and debts that remain.

### (8)     Husband's Bank Account.

The wife points out the fact the ledger used by the district court to calculate the property equalization payment does not include the value of the husband's bank account, which the husband acknowledged had a balance of $3000.00 to $4000.00 at the time of trial. This bank account should have been included on the husband's side of the ledger at a value of $3000.00.

### (9)     Husband's 401(k) Loan.

On the husband's side of the ledger used in calculating the property division

---

[2] Based on the exhibits submitted, it appears the "bank account" at issue as referenced in the testimony was actually an account in a different credit union than the one previously mentioned in section (6). In the interest of privacy, we are not differentiating these accounts by name of financial institution. Instead, we will refer to this second credit union account as a "bank account," as was done at trial.

and equalization payment, the district court listed the husband's 401(k) as an asset and a loan against his 401(k) as a liability. The wife claims it was error to include the value of the loan in the calculation because it did not change the vested balance of the 401(k) account as shown on account statements. We find this argument to be without merit. Although the statements show a vested account balance that is not reduced by the loan balance, those same statements clearly show the existence of the outstanding loan balance. There was no evidence presented suggesting that the loan against the retirement account would not ultimately reduce the value of the account or that somehow the loan would simply go away or be ignored when funds from the account were disbursed. The district court properly included both the vested balance of the account and the loan balance in its calculations.

## C.    Conclusion.

After making the adjustments as noted above, the resulting net worth to the husband is $100,921.12[3] and the resulting net worth to the wife is $42,223.75.[4] Under the circumstances of this case, we find it equitable to equalize the parties' respective net worths by requiring the husband to pay the wife a property settlement payment of $29,348.69. *See In re Marriage of Rhinehart*, 704 N.W.2d 677, 683 (Iowa 2005) ("Although an equal division is not required, it is generally recognized that equality is often most equitable."). The district court's order is

---

[3] Calculated by taking the husband's original net worth figure of $95,921.12, eliminating $2000.00 of the husband's credit card debt, and adding $3000.00 for his bank account.

[4] Calculated by taking the wife's original net worth figure of $53,233.75, eliminating the value of the wife's premarital Roth IRA ($6000.00), and eliminating the value of the wife's premarital credit union account ($5000.00).

modified to change the property equalization payment to this amount rather than the $23,400.00 originally ordered. All other terms of the district court's decree remain unchanged.

## IV. Appellate Attorney Fees.

The wife requests appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013). In determining whether to award appellate attorney fees, we consider the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal. *Id.* Due to the significant difference in the earning abilities of the parties and the wife's partial success on appeal, we award the wife $2000.00 of appellate attorney fees.

**AFFIRMED AS MODIFIED.**